IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERCIA ) | Case No: 1:18-mj-21 |
| ) | Assigned To: Magistrate Judge Robin M. Meriweather |
| v. ) | Date Assigned: 03/5/2018 |
| ) | Description: Rule 5 Arrest Warrant |
| RYAN ALAN BEDA, ) | |
| ) | |
| Defendant. ) | |

### AFFIDAVIT IN SUPPORT OF A
### CRIMINAL COMPLAINT AND ARREST WARRANT

I, Kendrah Peterson, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed since 2006. I am currently assigned to Enforcement Group Forty-Four at the Washington Division Office, located in the District of Columbia.

2. While with the DEA, I have participated in the investigation of narcotics traffickers and possessors. Many of these investigations led to the arrest and conviction of narcotics dealers and money launderers. In the course of conducting these investigations, I have used several different kinds of investigative techniques, including: interviewing informants and cooperating sources; conducting physical surveillance; conducting short-term and long-term undercover operations, including reverse undercover operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification data; conducting court-authorized electronic surveillance; preparing and executing search warrants, which have led to substantial seizures of narcotics, firearms, contraband, and drug related assets; and, the analysis of financial documents and

records.

3. This affidavit is being submitted in support of a criminal complaint charging RYAN ALAN BEDA ("BEDA") with conspiracy to distribute fifty (50) grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

4. The facts and information contained in this affidavit are based upon my personal knowledge of the investigation and information obtained from other state and federal law enforcement officers. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of reports, documents, and other physical evidence obtained during the course of this investigation.

5. This affidavit contains information necessary to support probable cause. The information contained in this affidavit is not intended to include each and every fact and matter observed by me or known to the government.

6. During the course of this investigation, investigators have used five cooperating sources (hereinafter, "CS-1" through "CS-5"). For purposes of this affidavit, all cooperating sources will be referred to in the masculine gender regardless of their true gender. The information provided by all of the cooperating sources has been corroborated by consensually monitored telephone calls, text messages, and other means. To my knowledge, none of the information provided by any cooperating sources has proved to be false, misleading, or inaccurate in any material respect.

7. CS-1 has been a confidential source with the DEA since 2015. CS-1 is an admitted drug user and had one prior drug trafficking conviction. CS-1 agreed to cooperate on behalf of an individual who pled guilty and is currently serving a sentence for the distribution of

methamphetamine. CS-1 is cooperating with law enforcement in hopes of receiving credit for cooperation after pleading guilty to a federal drug trafficking charge.

8. CS-2 has been a confidential source with the DEA since 2015. CS-2 is an admitted drug user and has a prior conviction for misdemeanor fraud. CS-2 is cooperating with law enforcement in hopes of receiving credit for cooperation after pleading guilty to a federal drug trafficking charge.

9. CS-3 has been a confidential source with the DEA since 2015. CS-3 is an admitted drug user and has a prior drug possession conviction. CS-3 is cooperating with law enforcement in hopes of receiving credit for cooperation after pleading guilty to a federal drug trafficking charge.

10. CS-4 has been a confidential source with the DEA since 2016. CS-4 is an admitted drug user. CS-4 has a limited prior criminal history which includes a conviction for driving under the influence. CS-4 is cooperating with law enforcement in hopes of receiving credit for cooperation after pleading guilty to a federal drug trafficking charge.

11. CS-5 has been a confidential source with the DEA since 2017. CS-5 is an admitted drug user and has a prior drug trafficking conviction and identity theft conviction. CS-5 is cooperating with law enforcement in hopes of receiving credit for cooperation after pleading guilty to a federal drug trafficking charge.

## PROBABLE CAUSE

A. <u>Background on Investigation</u>

12. Between late 2014 and early 2017, cooperating sources have reported to law enforcement that BEDA was involved in purchasing and distributing methamphetamine within the Eastern District of Virginia, and the surrounding metropolitan area. Over the course of the

investigation, law enforcement learned that BEDA utilized sources of supply for quantities of methamphetamine in Washington, D.C., Fairfax County, Virginia, North Carolina, and New York. In his time trafficking methamphetamine, BEDA has maintained a regular customer base.

B. <u>Historical Information provided by CS-1</u>

13. In or around July 2015, law enforcement intercepted approximately two pounds of suspected methamphetamine, which was intended for CS-1. CS-1 was arrested and provided law enforcement with information that showed he had several individuals who were part of his "crew" and that they distributed methamphetamine for him in the Washington Metropolitan Area. CS-1 identified BEDA as part of this "crew".

14. CS-1 was a member of the instant conspiracy to distribute methamphetamine until early July 2015. CS-1 stated that BEDA was originally obtaining ounce quantities of methamphetamine from a source of supply who drove to the Washington Metropolitan area from North or South Carolina.

15. CS-1 supplied BEDA with "8-ball" (3.5 grams) quantities of crystal methamphetamine on numerous occasions and was aware that BEDA was obtaining ounce quantities from another supplier in Washington, D.C., during the same period, which spanned approximately six months in or around 2015.

16. CS-1 provided law enforcement with a contact phone number for BEDA: 703-231-1075. Law enforcement obtained call detail records for 703-231-1075. These records confirmed contacts between BEDA and CS-1 on numerous occasions. Those records also showed that BEDA was in contact with other cellular telephone numbers associated with other CSs referenced in this affidavit.

C. <u>Historical Information provided by CS-2</u>

17. In 2016, law enforcement arrested CS-2 pursuant to federal drug trafficking

4

charges in the Eastern District of Virginia. CS-2 was a member of the "crew" CS-1 previously described. CS-2 was present on numerous occasions when BEDA obtained methamphetamine from CS-1 and others from 2015 through 2016.

18.     CS-2 was a member of the instant conspiracy to distribute methamphetamine until early Fall 2016. CS-2 purchased approximately half-ounce quantities of methamphetamine from BEDA on several occasions in early 2015 for further distribution in the Eastern District of Virginia and elsewhere.

19.     According to CS-2, following the CS-1's arrest, BEDA was obtaining ounce-quantities of methamphetamine from others in Washington, D.C. including CS-4. Additionally, CS-2 reported that following the CS-4's arrest, BEDA was obtaining multiple ounces of methamphetamine from CS-5, who resided in Fairfax County, Virginia.

C.      Historical Information provided by CS-3

20.     In 2016, law enforcement arrested CS-3 on federal drug trafficking charges in the Eastern District of Virginia. CS-3 was member of CS-1's "crew" and was also present on numerous occasions when BEDA obtained methamphetamine from CS-1 and others through 2016.

21.     CS-3 was a member of the instant conspiracy to distribute methamphetamine until early Fall 2016.

22.     CS-3 stated that after CS-1's arrest, BEDA also acted as a "courier" for methamphetamine traffickers by making numerous trips to New York and Philadelphia to pick up methamphetamine for other unindicted co-conspirators.

D.      Historical Information provided by CS-4

23.     In 2015, law enforcement law enforcement intercepted approximately two

pounds of suspected crystal methamphetamine intended for CS-4.

24. CS-4 was a member of the instant conspiracy to distribute methamphetamine until late 2015. CS-4 supplied BEDA with ounce quantities of crystal methamphetamine on approximately twenty occasions during that time frame.

E. CS-4 Meeting with BEDA on June 16, 2015

25. On June 26, 2015, under the direction and supervision of law enforcement, CS-4 arranged to meet with BEDA to discuss methamphetamine trafficking. The substance of that meeting was captured on an audio recording device, which was later reviewed by law enforcement.

26. During the conversation, BEDA discussed having methamphetamine customers in Virginia and Washington, D.C. BEDA also verified that he had been purchasing methamphetamine from CS-1 and he currently had other suppliers that would sell him ounce quantities.

F. Historical Information provided by CS-5

27. In December 2016, law enforcement arrested CS-5 pursuant to a traffic stop wherein he was found in possession of approximately seven pounds of methamphetamine. After the traffic stop, law enforcement executed a search warrant at CS-5's residence in Fairfax County, Virginia, which resulted in the seizure of an additional pound of methamphetamine. CS-5 identified BEDA as a frequent methamphetamine customer and distributor.

28. CS-5 admitted that he supplied BEDA with ounce quantities of methamphetamine on at least five occasions in 2016. CS-5 was also aware that BEDA was further distributing

methamphetamine to others in the Eastern District of Virginia and elsewhere. CS-5 provided a phone number for BEDA: 202-250-4499.

G.   Communications between CS-5 and BEDA from phone downloads

29.   In early 2017, CS-5 consented to a search of his cellular telephones. That search revealed communications corroborating CS-5's statements that he conspired with BEDA to distribute methamphetamine. For instance, the below exchange reveals that CS-5 and BEDA were discussing BEDA purchasing methamphetamine from CS-5 to further distribute to other unindicted co-conspirators.

| DATE | FROM | MESSAGE |
|---|---|---|
| 07/01/16 | BEDA | Greg just came by. What's one for him? |
| 07/01/16 | CS-5 | 12. For everyone |
| 07/01/16 | CS-5 | 12/22-2/36-4 |
| 07/01/16 | BEDA | And for a half 1 of juice |
| 07/01/16 | CS-5 | That went up. 700 or 350 |
| 07/01/16 | CS-5 | I haven't spead the word yet so it's cool if he just gave 3 |

30.   Based on my training, experience, and knowledge of this investigation, I believe that in the above messages, when BEDA inquires "What's one for him?", he is inquiring about

7

the price of one ounce of methamphetamine. When CS-5 states "12/22-2/36-4" he is providing price of one ounce of $1,200, two ounces for $2,200, and four ounces for $3,600.

H. <u>Law enforcement seizure of crystal methamphetamine and currency on August 29, 2017</u>

31. On or about August 29, 2017, in Washington, D.C., law enforcement officers conducted a consensual encounter with BEDA and an unindicted co-conspirator (UCC-1) after they arrived at Union Station on an Amtrak train from New York City. BEDA was found in possession of approximately 28 grams of suspected crystal methamphetamine and $6,000. UCC-1 was found in possession of approximately 56 grams of suspected crystal methamphetamine and $9,000. Law enforcement performed a preliminary field-test on the suspected methamphetamine found with each suspect. Each returned positive results for the presence of methamphetamine.

I. <u>Statement of BEDA</u>

32. After having been advised of his right against self-incrimination and to consult an attorney, BEDA agreed to voluntarily speak with law enforcement regarding his methamphetamine trafficking. BEDA also consented to a search and examination of two cellular telephones found in his possession.

33. BEDA admitted that he had been distributing methamphetamine since early 2014. BEDA admitted that he had been receiving ounce quantities of methamphetamine from CS-1, CS-4, and CS-5.

34. BEDA admitted that in approximately February 2017, he began to obtain larger quantities of methamphetamine from a source of supply based in New York. He stated that initially obtained ounce quantities from this unindicted co-conspirator (UCC-2) and then progressed to purchasing one (1) pound quantities every one (1) to two (2) weeks.

35. BEDA admitted that on August 28, 2017, he and UCC-1 traveled to New York to attempt to purchase methamphetamine from UCC-1, but they were not able to make contact with him. BEDA stated that the methamphetamine that was seized by law enforcement had been previously supplied by UCC-2.

36. Law enforcement reviewed the downloaded contents of BEDA's cellular telephones and discovered messages referring to meetings with methamphetamine customers and suppliers in various locations within the Eastern District of Virginia, including Arlington County and Alexandria.

## CONCLUSION

37. Based upon the foregoing, I believe there is probable cause to believe that from in and around 2014 to on or about August 29, 2017, in Fairfax County, Virginia, within the Eastern District of Virginia and elsewhere, RYAN SEBASTIAN BEDA, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to unlawfully, knowingly, and intentionally distribute fifty (50) grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)., in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Kendrah Peterson
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me the 30th day of October, 2017.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa C. Buchanan
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **Under Seal** |
| v. | ) | No: 1:17-mj-493 |
| RYAN BEDA, | ) | The Hon. Theresa C. Buchanan |
| Defendant. | ) | |

ORDER TO SEAL

The UNITED STATES, pursuant to Local Rule 49(B) of the Local Criminal Rules for the United States District Court for the Eastern District of Virginia, having moved to seal the complaint and affidavit in support of the complaint, the Motion to Seal, and proposed Order in this matter; and

The COURT, having found that revealing the material sought to be sealed would jeopardize an ongoing criminal investigation; having considered the available alternatives that are less drastic than sealing, and finding none would suffice to protect the government's legitimate interest in concluding the investigation; and finding that this legitimate government interest outweighs at this time any interest in the disclosure of the material; it is hereby

ORDERED, ADJUDGED, and DECREED that, the complaint and affidavit in support of the complaint, Motion to Seal, and this Order be Sealed until the United States moves to unseal.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa C. Buchanan
United States Magistrate Judge

Date: 10/30/17
Alexandria, Virginia

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **Under Seal** |
| | ) |
| v. | ) No: 1:17-mj-493 |
| | ) |
| RYAN BEDA, | ) The Hon. Theresa C. Buchanan |
| | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S MOTION TO SEAL COMPLAINT
## PURSUANT TO LOCAL RULE 49(B)

The United States, by and through undersigned counsel, pursuant to Local Rule 49(B) of the Local Criminal Rules for the United States District Court for the Eastern District of Virginia, asks for an Order to Seal the complaint and affidavit in support of the complaint until the United States moves to unseal.

**I.   REASONS FOR SEALING** (Local Rule 49(B)(1))

1. At the present time, Special Agents and Task Force Officers of the Drug Enforcement Administration are conducting an investigation of distribution of a controlled substance, to wit: methamphetamine (actual), and conspiracy to do the same, in violation of 18 U.S.C. §§ 841(a)(1) and 846. The defendant is a distributor in the Eastern District of Virginia and elsewhere, with ties to sources of supply in New York City.

2. Premature disclosure of the charges against the defendant would jeopardize an ongoing criminal investigation into the main target, whom law enforcement believe to be responsible for playing a leading role in a conspiracy to distribute methamphetamine and launder the proceeds. Disclosure of the complaint and affidavit in support of the complaint risks alerting this target to the investigation against him and providing him, and possibly others, with a

roadmap of the ongoing criminal investigation, including the identity of potential cooperating witnesses.

## II. REFERENCES TO GOVERNING CASE LAW (Local Rule 49(B)(2))

3. The Court has the inherent power to seal complaints and affidavit in support of complaints. See United States v. Wuagrieux, 683 F.2d 1343, 1351 (11th Cir. 1982); State of Arizona v. Maypenny, 672 F.2d 761, 765 (9th Cir. 1982); Times Mirror Company v. United States, 873 F.2d 1210 (9th Cir. 1989); see also Shea v. Gabriel, 520 F.2d 879 (1st Cir. 1975); United States v. Hubbard, 650 F.2d 293 (D.C. Cir. 1980); In re Braughton, 520 F.2d 765, 766 (9th Cir. 1975). "The trial court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." In re Knight Pub. Co., 743 F.2d 231, 235 (4th Cir. 1984). Sealing the complaint and affidavit in support of the complaint is appropriate where there is a substantial probability that the release of the sealed documents would compromise the government's on-going investigation severely. See e.g. In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 574 (8th Cir. 1988); Matter of Eye Care Physicians of America, 100 F.3d 514, 518 (7th Cir. 1996); Matter of Flower Aviation of Kansas, Inc., 789 F.Supp. 366 (D. Kan. 1992).

## III. PERIOD OF TIME GOVERNMENT SEEKS TO HAVE MATTER REMAIN UNDER SEAL (Local Rule 49(B)(3))

4. The complaint and affidavit in support of the complaint would need to remain sealed until the United States moves to unseal the complaint and affidavit in support of the complaint.

5. The United States will move to unseal the sealed materials once the defendant makes his initial appearance pursuant to Rule 5 of the Federal Rules of Criminal Procedure.

6. The United States has considered alternatives less drastic than sealing and has

found none that would suffice to protect this investigation.

WHEREFORE, the United States respectfully requests that the complaint and affidavit in support of the complaint and this Motion to Seal and proposed Order be sealed until the United States moves to unseal.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____
David A. Peters
Special Assistant United States Attorney (LT)